May it please the court, Ernest Galvan for Kay McKenzie Parker, the appellant, and I would like to reserve three minutes for rebuttal. Okay. This appeal is between Kay McKenzie Parker, the former counsel for the plaintiffs in the underlying civil rights case, and Federal Express, which was the defendant. And the case is about California's anti-discrimination law, the Fair Employment and Housing Act, the FIHA, and specifically its fee shifting provision. And in the fee shifter, this is an area where California law has diverged significantly from federal anti-discrimination law. Most importantly in this area, it has to do with the fee shifter and to whom it belongs. Does it belong to the client or the attorney? The California rule is that it belongs to the attorney unless there's an enforceable agreement to the contrary. Counsel, I'm sorry to jump in so quickly, but you said it right. California law is a little strange here from the rest of the country, let alone the federal law. And my question is, why should we further push that in a strange direction? In other words, the normal rule, of course, is when you agree with a client, I'm going to take 40 percent, you take 40 percent of everything that's awarded, the interest, the principal, the attorney's fees, and you get 40 percent of it. A little different in a class action, of course, where the court says. So my question, though, is on the last clause you just emphasized, unless a contract provides to the contrary, shouldn't we interpret this contract to an essence, in essence, that she said, assuming the addendum is signed on to, she said, I get 40 percent, period. Not going to get anything else. No, Your Honor, because that would directly contradict the California Supreme Court's rule in Flannery. As a matter of federalism, it's really up to the state Supreme Court to say what state law is. The state Supreme Court says it belongs to the attorney. And therefore, only the attorney can waive. But didn't she waive? I mean, it's true, there's not an express address of the attorney's fees. But she signed on to the principal. I get 40 percent of whatever you recover. Does that exclude interest just because interest isn't named? Does it exclude cost just because cost isn't named? If she waived, then the lawyer in Flannery also waived. Because in Flannery, they had the same retainer agreement. So if that's the result here, then Flannery is flipped and the federal court has to be dealing with separate facts. How about our versus the state court? I mean, the courts have been impressed with the fact that, okay, you got half of what you were asking for, and there was no issue during the trial of the attorney's fees. What we're trying to get at, California's court speaking, what we're trying to get at is, if you haven't expressly waived, we want everybody to know that you preserved your right to ask after the trial, after the finding. But we're dealing with a little bit different facts, aren't we? Well, in the facts here, Ms. Parker did preserve her rights. As soon as she learned that Federal Government negotiations and had scheduled a mediation with the seven settling plaintiffs, she sent letters and e-mails to everyone concerned saying, I have not waived my statutory fees. FedEx has an obligation to my statutory fees, and I should be at the table in any mediation. We've merged Flannery into this case, too. And we're doing the very floodgates that the tail wag the settlement dock. In other words, you're saying that contrary, if we extend it here, contrary to Federal law certainly, maybe even California law, a defendant cannot in exchange, quid pro quo in the settlement, cannot extract a promise that that's it. No attorney's fees, it's 200 million bucks, but that's it. You're not going to ask for another hundred million in fees. We would, in essence, be subverting that rule. The floodgates argument only works if the court accepts Federal Express's hyperbole, which is, they say, that any attorney who touched the file for even one hour will come in. But that's not Kay Parker. Kay Parker is the lawyer as to whom Judge Ilston said, you're the one who's always here in the courtroom. You're the one who carried the burden of this case. You're the one who was in all those depositions with FedEx. This is not every lawyer who made the case. And FedEx was on notice that this is a person holding a fee claim. This is, there are, there's no floodgates risk. It isn't exactly true that Judge Ilston thought she carried the case. She didn't only give her 25 percent, so she shouldn't, couldn't have said that she was carrying the case. I mean, the honest truth is, it doesn't seem to me she thought she was very much a part of carrying the case, and she lost a lot of summary judgments, Judge Ilston said. So my worry is, as we look at Flannery, it seems to me that under Flannery, we have to determine whether these agreements constitute an agreement to the contrary, don't we? Yes, Your Honor. And once we, and we have to look at the language of the underlying agreement to determine whether it's an agreement to the contrary. And the circumstances that existed at the time and thereafter to determine whether it's an agreement to the contrary. Which is exactly what Jill Ilston did, did she not? I mean, she looked at what the special master said. Special master says, well, it certainly doesn't apply to trials, because Mr. McCoy didn't even think it applied to trials. He thought she didn't even have to have anything to do with this till you got to trial. So, we can't, we're going to separate out the trial situation and whether it was the same. Then she said, and besides that, the special master found it notable that the judgment plaintiffs signed a separate addendum, specially waiving their right to feast. Nothing was signed here. So it must have been that that was supposed to cover it. In fact, she went on to suggest all kinds of things, relying on the special master and what the special master had said, as well as what was in the language of the agreements. Different from Flannery. If I may, in two parts. So the first point on this, regarding Ms. Parker carrying the case, on the same page of the same order, Judge Ilston said, Ms. Parker was the one who shouldered the burden of the case for significant periods of time while Mr. McCoy was absent. And we have a separate appeal regarding the 25-75 split. But on the core of the question, to the extent that the parole evidence regarding Mr. McCoy's later agreement is relevant, it cuts precisely the other way. It demonstrates that Ms. Parker's claim that the underlying retainer contract was, in fact, silent as to the disposition of statutory fees. Because if it had spoken about it, then the addendum, Mr. McCoy's addendum, would have been completely unnecessary. The parole evidence cuts the other way. And the plain language of the contract is the same as in Flannery, where Flannery also had a standard contingent fee, 40 percent of the recovery, and the rule was flipped from what the district court did here. And that's the fundamental error of law and  Okay. Thank you, Your Honor. And you've saved about two minutes. Thank you. Good morning, Your Honor. May it please the Court. My name is Frederick Douglas, appearing on behalf of Federal Express Corporation. The district court did not abuse its discretion in granting Federal Express's motion for declaratory relief. This case is a very simple case, very simple facts, very simple law. The simple facts is that Federal Express entered into a settlement agreement with seven plaintiffs. There was no global settlement. Each settlement was negotiated individually over a long period of time. Kay Parker was terminated 14 months before the first mediation. This case is very simple. The settlement agreement, the agreement between Kay Parker and her counsel is absolutely clear, that in cases of settlement, as we have here, she will only get 40 percent. Kay Parker is a sophisticated lawyer. It goes without saying that the client did not draft these fee agreements. These fee agreements were drafted by competent counsel, by Mr. McCoy, and Ms. Parker signed on to those. They were not amended. Therefore the But the argument is that the fee agreement doesn't mention any statutory fees under FIHA, and under California law, if those aren't mentioned, they are not waived. What's your response to that? My response to that, Your Honor, is twofold. First of all, the cases being relied on are very different from this case. And as we indicated in our briefing material, those cases deal with situations in which there was a finding on a merits and judgment. There's been no finding on a merits here. There's been no judgment against FedEx. Furthermore, Your Honor, this case I'm going to stop you right there. Is that an argument that says there's no prevailing party? Is that what that argument is? Exactly, Your Honor. There's no prevailing party in FIHA. Okay. But that's not the question I was after. The question, assuming that there's a prevailing party, the argument is the fee agreement doesn't mention FIHA statutory fees, and the argument is, under California law, that means that they're not waived. Well, Your Honor, I cannot assume that there is a prevailing party, because the settlement agreements are the exact opposite. Well, I'd like you to assume for purposes of the question that there's a prevailing party. Assuming there is a prevailing party, Your Honor, the contracts are very simple. Kay Parker, Joaquin McCoy are only entitled to 40 percent. Lawyers who want more from a fee agreement from their clients have to put it in writing. There's nothing in writing to the client. The problem with that argument is that, under California law, the statutory fees aren't coming from the client. They're coming from you. I mean, that's why you're standing here instead of the client. But California law also assumes, Your Honor, that clients can settle their cases when it's in their best interest to do so. California law also assumes that there is a judgment on the merits entitling somebody to statutory fees. The facts here are very simple, and no matter how we try to dice it up, at the end of the day, seven people settled the case. And there is a great concern about floodgates of litigation and fee disputes driving these cases. These cases were settled, and the fee agreement was drafted by counsel, not the client. I know your best answer you already made, and that is that, in light of Flannery and judges' correct notation that it requires an express waiver, this agreement, as you're just arguing, this agreement can be read broadly enough to constitute that express waiver. She agreed, 40 percent, that's it. That was her intention, Your Honor. Otherwise, there would be something in the record before this Court indicating otherwise. Let me ask you a question. You got up and said this is an abuse of discretion decision. Is it an abuse of discretion decision to determine whether this is an agreement to the contrary? Well, Your Honor, this whole dispute arises out of a statutory fee. So this is an agreement to the contrary. Well, I understand that, but that doesn't change my question. What is the standard we have of review of the district court's decision that this was an agreement to the contrary? I believe the standard, Your Honor, is still an abuse of discretion, because what the district court had before it were clear fee agreements between Ms. Parker and the parties settled. So the question really is, did the district court have sufficient information in front of it to make a determination as to whether Parker is entitled to statutory fees from FedEx? And we believe the answer is the district court had sufficient information. As a practical matter, and I don't want a precise number and I'm obviously not going to be held to it, but as a practical matter, what kind of money are we talking about? I mean, assuming that you lose on this point, which is only an assumption, what's the range of statutory attorneys' fees to which you might be entitled? Your Honor, I can answer that with pretty much good precision. Okay. For two plaintiffs in which there was a judgment entered against Federal Express, Edward Alvarado and Charlotte Bowswell, Ms. Parker did not try those cases. Ms. Parker did not go to trial. Ms. Parker has a combined fee petition of $3 million for two cases that she did not take to trial, that she did not try. That's what we're looking at, Your Honor. That's the range. Let me ask you another question. Your alternative argument is that there is no prevailing party in this particular situation. I look at the whole of what happened in this particular case, the fact that there were summary judgments that were lost, claims were lost, the fact that there was no injunction gained, lots of things that were alleged and wanted in this particular case. And so one can suggest, even based on that, that maybe they were not necessarily prevailing parties in all that they wanted to be. My worry is that generally prevailing party status is not something we make deciding on appeal. This is generally something we allow the district court to do. District court did never consider prevailing party at all. Why should we, when we were not there, we don't know what they won and what they lost exactly, we can make a general, I mean, I've tried to even list out what they won and what they lost. Why should I make that determination? Why should I not, because the district court would be in a better position to decide who's the liable, you can't say we're liable, and weigh that in on the whole of the circumstance and let the district court decide. Well, Your Honor, the district court actually did adopt the special master's decision in which the issue of prevailing party was addressed. The special master found that Hernell Evans, who lost his judgment, the district court vacated his judgment, that Mr. Hernell Evans was no longer entitled to statutory fees. Well, he did get a verdict and it was reversed, right? He did get a verdict and it was reversed. However, after it was reversed, the special master found that he was no longer a prevailing party. At the request of Ms. Parker, Judge Olson adopted it. Well, that was because at that point he got nothing. He got nothing, exactly, Your Honor. At this particular point, these plaintiffs, some got $30,000, some got high levels, that they did get some money, and based on California law, one can suggest they might be prevailing parties, even though they didn't get all they wanted here, and somebody has to weigh that out. Well, Your Honor, they're not prevailing parties for purposes of FEHA and even Title VII. The case law is pretty clear, Your Honor, that prevailing parties, there's at least a trial, some type of decision on the merits, we have neither here, and some type of judgment entered against the defendant. Is that Federal law or State law that says that? It's both, Your Honor. I mean, I've got some pretty good State cases that suggest that settling plaintiffs are prevailing parties. Well, Your Honor, I respectfully say that with respect to those cases, if the Court  injunctive relief. Now, even though the class settled with the defendant under specific California law, when that occurs and there is class-wide relief, when there is injunctive relief that benefits the public as a whole, the Courts have said that, yes, there can be statutory fees. But we don't have that here, Your Honor. Each one of these cases were negotiated individually. There is no injunctive relief. There was no class action allegations. No class was certified. Individual claims. I'm sorry, Your Honor. I thought you had a question. No, I'm just listening. That's okay. So I see that I have roughly 40 seconds left. And I respectfully request that this Court upheld and affirm the District Court's decision to grant injunctive relief in favor of Federal Express. Thank you very much for your time and attention to this matter. Thank you. Response. Thank you, Your Honor. The amount precisely at stake here is in the record. It is $437,000, and that is at excerpts of record, Ms. Parker's excerpts of record, 84, 85, and 145. And is that $436,000 subject to a decrease from the amount she already received? The amount, that is the heart of who's harmed by this error. Well, but the bottom line is, if, in fact, you're going to make your argument you're going to make, you cannot in any amount say that she can get more than 40 percent, even if she gets statutory fees. Or the statutory fee has to decrease the amount that she would get. Absolutely the latter. The clients need to get this money back. The error that the District Court made hurt the clients. It never should have happened that there should have been a quantum merit award coming from the clients in a fee-ha civil rights case where you've got a defendant against whom they've prevailed. That's statutory fees. And that's why the bedrock California law is you can prevail by settlement. You do not need a judgment to prevail. And that's why, even though FedEx purports to speak for my client's former clients, those are crocodile tears. My client's former clients need to get the money back that they paid to Ms. Parker. They never should have paid it. FedEx should pay that $437,000. That will be the result if California law is properly applied here. The District Court on de novo review, doing a contract interpretation, is reversed. Regarding prevailing parties. You said de novo review. I guess that's my question I ask him, which is also pretty important to me to ask you. Why, in an attorney fee situation where the judge has to determine prevailing party and who gets attorney's fees, and that's always a discretionary decision, is it then de novo, absolute going to de novo, simply because she has to interpret contracts that are signed by the parties? I don't find that law. I believe it's de novo review because the District Court's analysis started and stopped with contract interpretation. But that's what she does in determining fees. That's what she does in determining prevailing parties. She always puts these contract provisions in that analysis. I think the abuse of discretion standard is meant to apply to the latter stages, where she's applying the Lodestar factors, the Kerr-Johnson factors, the more discretionary factors. But here where the threshold question of contract interpretation is the beginning and end of the story, de novo review would be proper. Is there a good case on that? I do not have one off the top of my head. I didn't think you would because I look for it. All right. Thank you. Thank you. Thank you very much. Thank both sides for their arguments. Parker v. FedEx now submitted for decision.
judges: Jones, Fletcher W. , Smith N. R.